IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL WILLIAMS<br>a/k/a DARYL WILLIAMS<br><br>    v.<br><br>DETECTIVE MANUEL SANTIAGO, et al. | :  CIVIL ACTION<br>:<br>:  No. 24-6164<br>:<br>:<br>:<br>: |

### MEMORANDUM

**Judge Juan R. Sánchez**                                                              **September 24, 2025**

In 1989, Plaintiff Paul Williams was convicted of murder and sentenced to life in prison. After serving more than 30 years in prison, Williams's life sentence was vacated, and he pled guilty to third-degree murder instead of waiting for a new trial. Williams was released from prison on January 24, 2023. He subsequently brought this 42 U.S.C. § 1983 suit against Defendants Detective Manuel Santiago, the City of Philadelphia, and John/Jane Does 1-10, alleging he was wrongfully convicted. Williams asserts witness coercion, fabrication of evidence, and concealing and/or suppressing material evidence against the individual Defendants. He asserts *Monell* claims against the City. The City has moved to dismiss the Complaint. Because Williams alleges sufficient facts to state a *Monell* claim, the City's motion will be denied.

**BACKGROUND**

On October 21, 1987, three masked men shot and killed Derrick Whitmore. Compl. ¶ 17, Dkt. No. 1. Williams was alleged to be one of the masked men and was tried and convicted of the murder in February 1989. *Id.* ¶ 1. He was sentenced to life in prison. *Id.* On January 7, 2022, the Commonwealth of Pennsylvania agreed to relief pursuant to the Post-Conviction Relief Act (PCRA), and Williams's life sentence was vacated on January 24, 2023. *Id.* ¶¶ 1, 4. After he pled

guilty to one-count of third-degree murder and conspiracy, he was resentenced to 17 to 34 years with effective immediate release. *Id*. Williams subsequently filed this suit against Defendants Detective Manuel Santiago, the City of Philadelphia, and John/Jane Does 1-10 on November 18, 2024, arguing he was wrongfully convicted in 1989.

He alleges the detectives and police officers involved in the investigation of the murder violated his constitutional rights by coercing witnesses, fabricating evidence, and concealing and/or suppressing material evidence. *Id*. Specifically, Williams alleges Detective Santiago coerced the statement from witness Ollie Minor and concealed information about the criminal record and cooperation of another witness, David Eisner. *Id*. ¶¶ 18-19. Further, he claims the individual Defendants "conspired to withhold exculpatory evidence in relation to witnesses and the fabrication of statements against" him and "made a concerted effort to manufacture a case and falsely implicate [him] by coaching and feeding witnesses with false testimony and threatening witnesses to fabricate against [him]." *Id*. ¶ 21. He also asserts *Monell* claims against the City, alleging the actions of the officers and detectives "were the results of policies, practices, customs, and deliberate indifference on the part of" the City, "including the failure to properly train and supervise officers . . . and the failure to take disciplinary and remedial actions against" the detectives. *Id*. ¶¶ 1, 54-61. The City moves to dismiss the Complaint.

**STANDARD OF REVIEW**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

2

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must assume the truth of all well-pleaded factual allegations, construe the facts and the reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 679).

**DISCUSSION**

The City argues the *Monell* claims must fail because Williams does not plead facts required for claims of municipal liability. Def.'s Mot. 3-4, Dkt. No. 13. In the alternative, the City argues any *Monell* claim premised on the individual Defendant officers and detectives' *Brady* obligation should be dismissed because such an obligation was not clearly established at the time of Williams' conviction. *Id*. at 9-10. A municipality may not be held liable for a constitutional violation under § 1983 based solely on the conduct of its employees. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691 (1978). Rather, "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (internal quotation marks and citations omitted). In other words, a plaintiff must establish "a deprivation of a constitutional right" as well as causation: the municipality "may only be held accountable if the deprivation was the result of municipal custom or policy." *City of Okla. City v. Tuttle*, 471 U.S. 808, 817 (1985) (internal quotation marks omitted).

3

Williams brings his claim against the City under a policy or custom theory. To establish causation, "a plaintiff must demonstrate 'an affirmative link between the policy or custom and the particular constitutional violation he alleges.'" *Hicks v. City of Philadelphia*, 783 F. Supp. 3d 834, 859 (E.D. Pa. 2025) (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman*, 914 F.3d at 798 (citation omitted). Custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citation omitted).

Williams also brings his claim under a failure to train or supervise theory. For a failure to train or supervise claim, a municipality will be liable where that "failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To state a claim for failure to train or supervise, a plaintiff must show "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011) (quoting *Carter*, 181 F.3d at 357).

Williams alleges a custom of widespread constitutional violations by the Philadelphia Police Department (PPD) in homicide investigations. Specifically, Williams recounts instances of alleged manipulation of evidence (Compl. ¶¶ 34(a)-(b)), supplying information to witnesses and witness intimidation (*id.* ¶¶ 34(a)-(j)), and concealing and/or suppressing exculpatory evidence (*id.* ¶¶ 34(k)-(o)) around the time of the investigation and prosecution of Whitmore's murder. Further,

4

Williams references similar conduct by Detective Santiago. In a 1991 case involving Detective Santiago, PPD homicide detectives allegedly engaged in tampering with evidence, coercive witness interrogation, and planting evidence. *Id.* ¶ 34(a). The defendant in that case was eventually exonerated, and Detective Santiago was later charged with perjury relating to the prosecution of that case. *Id.* ¶¶ 34(a), (j). Moreover, Williams claims that a series of consent decrees enjoining the PPD from engaging in unconstitutional practices in the 1980s and 1990s further points to the existence of a widespread custom of constitutional violations. Williams also asserts the City's acquiescence allowed the manipulation of evidence, witness coercion, and concealing and/or suppressing of evidence that led to his conviction.

Taken together, Williams has alleged enough facts, at this stage, to show the City was aware of PPD's allegedly unconstitutional actions, and the City's acquiescence caused his conviction. *See Alicea v. City of Philadelphia*, No. CV 22-3437, 2022 WL 17477143, at *6 (E.D. Pa. Dec. 6, 2022) ([T]he sheer volume of complaints . . . reasonably shows the City was aware of the misbehavior yet made a deliberate choice to allow it to continue." (quotation and citation omitted)). Further, the City's argument that individual Defendants may be entitled to qualified immunity for any *Monell* claims premised on their *Brady* obligation does not preclude municipal liability because a municipality "can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Mervilus v. Union Cnty.*, 73 F.4th 185, 196 (3d Cir. 2023) (quoting *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010)). Therefore, the City's motion fails. An appropriate order follows.

BY THE COURT:


<u>/s/ Juan R. Sánchez</u>
Juan R. Sánchez, J.